UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:04-CV-366-H

**ELECTRONICALLY FILED**

ALLEN HICKS                                                                                    PLAINTIFF

V.

**REPLY MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL PLAINTIFF TO
ATTEND AN INTERVIEW WITH LINDA DIERKING,
OR IN THE ALTERNATIVE, TO EXCLUDE THE TESTIMONY
OF SINK & ASSOCIATES**

CNH AMERICA LLC
AND
BLESCH BROS. EQUIPMENT CO., INC.                                              DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

Defendants, CNH America LLC ("CNH") and Blesch Bros. Equipment Co., Inc. ("Blesch Brothers") (hereinafter collectively "Defendants"), for their Reply Memorandum in Support of Motion to Compel Plaintiff to Attend an Interview with Linda Dierking, or in the alternative, to Exclude the Testimony of Sink & Associates state as follows:

**ARGUMENT**

I.      **Defendants Have Shown Good Cause for the Interview**

Plaintiff brought suit against Defendants alleging that on May 31, 2003, he was injured while using a hay baler designed and manufactured by CNH and sold by Blesch Brothers. (Plaintiff's Complaint, ¶¶ 9, 10.) Plaintiff claims that he has suffered lost earnings and permanent impairment of his power to labor and earn money. Plaintiff submitted to an interview with his own vocational expert, John Tierney. Tierney is expected to testify that, assuming Plaintiff is able to maintain his current employment, Plaintiff has suffered a loss

of earning capacity in the amount of $676,871. Mr. Tierney will further testify that, assuming Plaintiff is unable to maintain his current employment, his loss of earning capacity is $1,303,260. The Court has previously ordered Plaintiff to attend a vocational evaluation with Defendants' expert, Dr. Luca Conte.

In addition, Plaintiff seeks damages for future medical and rehabilitation needs. To that end, Plaintiff submitted to an interview with his proffered life care plan expert, Sink & Associates. Sink & Associates are expected to opine that the cost of a lifetime care plan for Plaintiff will be $2,213.799. (Exhibit A, Defendants Motion to Compel.) The testimony to be provided by Tierney and Sink & Associates relate to different subjects. Defendants have now moved the Court to compel Plaintiff to attend an interview with their life care plan expert, Linda Dierking.

The requirement of proving good cause "does not, of course, mean that the movant must prove his case on the merits in order to meet the requirements for a mental or physical examination." Schlangenhauf v. Holder, 379 U.S. 104, 119 (1964). In certain cases, such as this one,

> the pleadings alone are sufficient to meet [the in controversy and good cause requirements.] A plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with the good cause for an examination to determine the existence and extent of such asserted injury. Id.

Plaintiff has clearly placed his future care into controversy. The interview will allow Dierking to analyze that issue and the opinions put forth by Sink & Associates.

While Dierking does have access to Plaintiff's medical records and deposition, good cause does exist for compelling Plaintiff to attend the interview. The personal interview allows her to collect information regarding Plaintiff's history; his physical complaints and

limitations; environmental influences; medical treatment; daily activities; social activities; personal habits; and more. (Exhibit B to Motion to Compel.) The interview will allow Dierking to personally observe Plaintiff's physical capabilities. (Exhibit B to Motion to Compel.) As a whole, the personal interview will allow Dierking to gather information about Plaintiff's limitations, in all aspects of his life, that will assist her in determining Plaintiff's limitations and his actual future needs and goals. (Exhibit B to Motion to Compel.)

The observations that Dierking will make during the personal interview cannot be obtained without a personal face to face meeting. The observations cannot be made through review of medical records or depositions. Due to the abundance of information that can be gathered during the personal interview, there is clearly good cause for the personal interview.

The interview Dierking will conduct, and the evaluation that Dr. Conte will conduct, are entirely different. The purpose of Dr. Conte's vocational evaluation is to systematically collect all relevant information necessary for a complete analysis of Plaintiff's intellectual, academic, physical and economic capacities with respect to the world of work. In short, Dr. Conte will be determining Plaintiff's future work capacity. Dierking's interview is to gather information about Plaintiff's limitations, in all aspects of his life, that will assist her in determining Plaintiff's limitations and his actual future needs and goals. In short, Dierking will be determining Plaintiff's future medical care needs.

Dr. Conte and Dierking will be addressing two different subjects, and therefore will be asking different questions and gathering information for different purposes. It is the same reason that Plaintiff submitted to separate interviews with both of his experts, John

Tierney and Sink & Associates. Defendants would be inherently prejudiced if the expert they present at trial is not allowed the same opportunity afforded by Plaintiff to his own experts.

## II.     Defendants Objections to Plaintiff's Limitations

Defendants do not object to limitation number 1[1], other than what Dierking would observe during the interview. Defendants agree to Plaintiff's limitation number 2[2].

Defendants, as attachments to its Motion, provided the Court and Plaintiff's counsel with the clinical interview and history form that will be used during the interview, as well as the upper extremity amputee assessment form that will be used. These documents specifically outline the subjects that will be covered during the interview and should satisfy Plaintiff's limitation number 3[3].

Defendants object to Plaintiff's limitation number 4[4]. Dierking does not know the questions or follow-up questions to be asked by Dr. Conte and therefore the limitation is impractical. Second, as described above, the vocational evaluation and interview serve two different purposes. Dierking should be allowed to freely conduct her interview in order to gather the information she deems necessary. Defendants agree to Plaintiff's limitation number 5[5]. As to limitation number 6[6], Dierking would like to interview Mr. Hicks at his

---

[1] Ms. Dierking shall not undertake a physical examination, conduct any testing or require a physical demonstration by the Plaintiff.
[2] Ms. Dierking shall not ask questions relating to liability issues in this action.
[3] Defendants shall provide a complete list of all questions to be asked and tests to be administered by Ms. Dierking 10 days in advance of said examination.
[4] Ms. Dierking shall not repeat the questions asked by Mr. Conte.
[5] Disputes regarding the questions or other aspects of the evaluation not resolved by stipulation may be submitted for resolution by the Court prior to the evaluation.
[6] Mr. Hicks shall be compensated for his time and expenses in attending the evaluation.

home. Such location will neither cause Mr. Hicks to incur expenses nor necessitate compensation for his time, which Defendants would otherwise object to.

## CONCLUSION

"The deposition discovery rules are to be accorded a broad and liberal treatment to effectuate their purpose that civil trials in federal court no longer need to be carried on in the dark." <u>Schlangenhauf v. Holder</u>, 379 U.S. 104, 114-115 (1964) <u>citing</u> <u>Hickman v. Taylor</u>, 329 U.S. 495, 507 (1947). For the foregoing reasons, Defendants move the Court, pursuant to Federal Rule of Civil Procedure 35, to enter the previously tendered proposed order compelling Plaintiff to submit to an interview with Linda Dierking, or in the alternative, to exclude the testimony of Sink & Associates.

        LIONEL A. HAWSE
        D. CRAIG YORK
        LEE A. ROSENTHAL
        WOODWARD, HOBSON & FULTON, L.L.P.
        P.O. Box 1720
        Lexington, Kentucky  40588-1720
        Telephone: (859) 244-7100
        Facsimile: (859) 244-7111


        s/ Lee A. Rosenthal
        COUNSEL FOR DEFENDANTS
        CNH AMERICA LLC and
        BLESCH BROS. EQUIPMENT CO., INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on December 8, 2005, I electronically filed the foregoing with the Clerk of the United States District Court of the Western District of Kentucky through the CM/ECF system, which will send an electronic copy of the foregoing, along with a Notice of Electronic Filing, to:

    Douglas H. Morris
    dhm@omky.com
    Lea A. Player
    lap@omky.com
    OLDFATHER & MORRIS
    1330 South Third Street
    Louisville, KY  40208

    Joshua T. Rose
    jtrose@fbtlaw.com
    Gene F. Price
    gprice@fbtlaw.com
    FROST BROWN TODD LLC
    400 West Market Street, Floor 32
    Louisville, KY 40202

    Lionel A. Hawse
    lhawse@whf-law.com
    Lee A. Rosenthal
    lrosenthal@whf-law.com
    D. Craig York
    cyork@whf-law.com, kansert@whf-law.com
    WOODWARD, HOBSON & FULTON, L.L.P.
    P.O. Box 1720
    Lexington, Kentucky  40588-1720

I further certify that I mailed the foregoing by first class mail to the following non-CM/ECF participants:

> Matthew C. Hess
> HUDDLESTON & VAN ZANT
> P.O. Box 844
> Elizabethtown, KY 42702-0844

on this 8th day of December, 2005.

s/ Lee A. Rosenthal<br>
COUNSEL FOR DEFENDANTS