UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04-CV-366-H

ALLEN HICKS and                                                                                               PLAINTIFF
ANTHEM HEALTH PLANS OF KENTUCKY, INC.


V.


CNH AMERICA LLC and                                                                                         DEFENDANTS
BLESCH BROS. EQUIPMENT CO., INC.


**MEMORANDUM OPINION**

This matter is before the Court on Defendant Blesch Bros. Equipment Co., Inc.'s ("Blesch Brothers") motion for summary judgment on Plaintiff Allen Hicks' ("Hicks") claims against it. Blesch Brothers argues that it is not liable to Hicks under Ky. Rev. Stat. Ann. § 411.340, commonly referred to as Kentucky's "middleman statute." The Court has reviewed the arguments and discussed the case with counsel. The Court concludes that the evidence may present a claim against Blesch Brothers.

I.

This is a product liability action stemming from Hicks's use of a Model 648 New Holland Roll-Belt Baler (the "Baler") manufactured by CNH America LLC ("CNH") in 2001 and sold to Hicks by Blesch Brothers in March 2002. Each baler manufactured by CNH is supplied to the dealer with an operators' manual and an instructional videotape packaged in the baler's twine box, both of which are to be given to the customer under the terms of the

agreements between CNH and its dealers. Blesch Brothers received the Baler from another distributor, rather than directly from CNH.[1] Prior to the sale to Hicks, Blesch Brothers removed the shipping brackets, torqued the wheels, checked all grease fittings, checked the alignment of the chains, and mounted the PTO support area and hydraulic ends. Blesch Brothers then washed the Baler, touched it up with paint, and prepared it for delivery. A Blesch Brothers mechanic also installed the Baler on Hicks' tractor. When Hicks purchased the Baler, he received a 1998 manual and no videotape, rather than the 2001 manual and instructional videotape that should have been provided under the terms of the Dealer Agreement between CNH and Blesch Brothers.[2]

The 2001 manual contained a warning that was absent from the 1998 manual. Specifically, the 2001 manual contained a warning that was intended to be placed on the twine box (the platform that Hicks had used as a step to climb to the top of the Baler), which stated:

> ! WARNING SLIPPERY SURFACE or Machine Damage. Do not use this area as a step or platform. Failure to comply could result in death or serious injury.

The warning also contained a pictogram of a man falling from the Baler, and a "no step" symbol.

Hicks used the Baler without incident until May 31, 2003, when he experienced problems with the belt overlapping. This is a common problem with hay balers that requires correction before proceeding with hay baling. Hicks took the Baler to a used implement dealer near his

---

[1] The parties have not stated that the Baler had been used before, merely that it was transferred to Blesch Brothers from another dealer rather than directly from CNH. Therefore, the Court will assume that the Baler remained virtually unaltered from its original manufactured condition.

[2] The Dealer Agreement required Blesch Brothers to deliver with each baler "the appropriate current publications and forms for owners covering operation, maintenance, warranty, and other matters as determined by [CNH]." Blesch Brothers was also required to "instruct each purchaser, lessee or renter of a [baler] . . . in the safe use and operation of that [baler]."

farm, where the dealer realigned the belt but was unable to determine the cause of the problem. Hicks then returned to his farm and again attempted to use the Baler, but he experienced the same problem. Hicks dismounted the tractor, leaving both it and the Baler running, and walked around the Baler in an attempt to identify the problem. Unable to do so, he climbed up the front of the Baler and stood on the top of the housing on the left side of the Baler. When Hicks leaned over to examine the belts and rollers at the top of the Baler, he lost his balance and fell into the Baler. He was found entangled in the Baler forty-five minutes later by his son. Hicks lost both of his lower arms and his hands as a result of the accident.

## II.

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To withstand summary judgment, the non-movant must present sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for [the non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

III.

Blesch Brothers argues that it is immune from liability to Hicks under Kentucky's middleman statute, Ky. Rev. Stat. Ann. § 411.340, which provides that in any product liability action where the manufacturer is identified and subject to the jurisdiction of the court,

> [A] wholesaler, distributor, or retailer who distributes or sells a product, upon his showing by a preponderance of the evidence that said product was sold by him in its original manufactured condition or package, or in the same condition such product was in when received by said wholesaler, distributor, or retailer, shall not be liable to the plaintiff for damages arising solely from the distribution or sale of such product, unless such wholesaler, distributor, or retailer, breached an express warranty or knew or should have known at the time of distribution or sale of such product that the product was in a defective condition, unreasonably dangerous to the user or consumer.

Therefore, for the statute to apply, Blesch Brothers must meet two prima facie requirements: (1) the manufacturer must be identified and subject to the Court's jurisdiction, and (2) the product must have been unaltered from its original manufactured condition. The first requirement has been met – CNH has been identified and is subject to the Court's jurisdiction. However, the second requirement is in dispute.

At trial, Blesch Brothers must establish by a preponderance of the evidence that it sold the Baler to Hicks in its original manufactured condition or package or at least in the same condition as upon its receipt by Blesch Brothers. Hicks argues that there is a factual dispute regarding the reason Blesch Brothers provided the incorrect manual, and failed to supply a videotape and decals. He points to the testimony of Kevin Lubbensen, the president of Blesch Brothers. Lubbensen stated that Blesch Brothers would have received updated operators manuals from CNH under the "publication program," whereby CNH regularly supplies dealers with updated manuals. Lubbensen stated that, upon a model change or a manual change, Blesch

4

Brothers will receive new manuals to accompany CNH products.  Blesch Brothers claims that its practice is to supply whatever manual accompanies a baler it receives, and it offers no explanation as to why it provided the 1998 manual instead of the 2001 manual and videotape.

A failure to pass along a seller's warning to customers can make a retailer ineligible for the "middleman" defense.  *See, e.g., Edwards v. Hop Sin, Inc.,* 140 S.W.3d 13 (Ky. Ct. App. 2003) (genuine issue of material fact precluded summary judgment for restaurant where customer contracted illness after consuming raw oysters and seller had included warning on hazards of eating raw oysters and instructed retailer to inform customers of those hazards, because jury could find retailer altered the product by failing to convey warning).

Blesch Brothers claims that Plaintiff's argument regarding the manual purely on speculative.  However, it will be Blesch Brothers' burden at trial to establish that it in fact did *not* alter the product from its original manufactured condition if the middleman defense is to be applicable, and the Court can only assume that CNH would provide a 2001 manual to accompany a baler it manufactured in 2001.  Where Blesch Brothers' president testified that the company regularly receives updated manuals, and in the absence of evidence indicating otherwise, the Court must presume that the 2001 manuals were in Blesch Brothers' possession at the time of the sale to Hicks.  The factual dispute at this point must be resolved in the Plaintiff's favor.[3]

Accordingly, the factual dispute over the failure to provide the 2001 manual, which the Court finds materially different from the 1998 manual by virtue of the warnings regarding

---

[3] Certainly, if Blesch Brothers could establish that CNH had not yet supplied it with proper manuals, or that the 2001 manual did not in fact accompany the Baler, the Court's conclusion might be different on this point, although that alone would not resolve the question of whether Blesch Brothers would be entitled to summary judgment based on the middleman statute.

climbing on the twine box, creates at least one genuine issue of material fact that precludes summary judgment in favor of Blesch Brothers.

      The Court will issue an order consistent with this Memorandum Opinion.

cc:    Counsel of Record